*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
N.V.E, INC.,                        :      Civil Action No. 08-1633 (FLW)
                                    :
           Plaintiff,               :
                                    :
      v.                            :      OPINION
                                    :
SCOT FAMOUS,                        :
                                    :
           Defendant.               :
_____:

**WOLFSON, District Judge:**

Before the Court is an unopposed motion for partial summary judgment on Count I of the Complaint filed by Plaintiff N.V.E., Inc. ("Plaintiff" or "NVE"). This action arises out of allegations of trademark infringement by Defendant Scot Famous ("Defendant" or "Famous"). Specifically, Plaintiff alleges that Defendant has offered for sale nutritional supplement products bearing counterfeit versions of NVE's STACKER 2 mark. The Court afforded Plaintiff ample time to oppose this motion and Plaintiff has not filed an opposition; as such, the motion will be considered as unopposed. For the reasons set forth herein, the motion is **GRANTED**.

BACKGROUND

NVE is the manufacturer, distributor, and retailer of nutritional and dietary supplements, including the STACKER 2 line of products. See Plaintiff's Statement of Undisputed Facts at ¶ 1. NVE's reputation has been and continues to be enviable both in the trade and to the general consuming public. NVE's product line includes many supplement products that employ unique and distinctive logos, labeling, bottling, and capsule combinations. NVE owns many registered and

common law trademarks, including, <u>inter alia</u>, STACKER 2, as well as trade dress rights in connection with the manufacturer and sale of nutritional and dietary supplement products. <u>Id.</u> at ¶¶ 2-4. These trademarks have been extensively promoted by NVE to its customers through various national media.

Specifically, NVE has marketed a nutritional supplement under the distinctive mark STACKER 2 since August 1996. <u>Id.</u> at ¶ 2. NVE has obtained U.S. Registration No. 2,190,936 for the STACKER 2 mark. <u>See</u> Exhibit E, Registration Certificate for U.S. Trademark Registration No. 2, 190,936. Since its introduction, the STACKER 2 mark has been prominently displayed on Plaintiff's products, packaging, promotional material, advertisements, and catalogues. In 2004, however, the U.S. Food and Drug Administration ("FDA") issued a ruling banning the use of ephedra, which was an active ingredient in STACKER 2. <u>Id.</u> at ¶¶ 7-10. Following this imposition, NVE reformulated its products to eliminate and replace ephedra, and began distributing, marketing, and selling of ephedra-free STACKER 2 brand nutritional supplements.

Plaintiff alleges that in November 2006, while Famous was a nutritional supplement salesman for Sterling Grant Labs, Famous was informed by one of his customers, Arun Datwani, that he could supply Defendant's customers with NVE's STACKER 2 nutritional supplement product containing ephedra; it had become increasingly difficult to obtain discontinued supplies of STACKER 2 in its original ephedra-based formulation. In turn, Defendant sold 288 bottles of STACKER 2 with ephedra to his customer ShopWars.com. <u>Id.</u> at ¶ 14. On December 14, 2006, the principal of ShopWars.com, Michael Schindele, received a cease and desist letter from NVE, claiming that any sale of ephedra-based products bearing the STACKER 2 trademark was an unlawful infringement on NVE's trademark, and that the products that Defendant was selling were

actually counterfeit versions of NVE's original ephedra-based STACKER 2 product.

NVE subsequently filed suit against ShopWars.com for trademark infringement, which resulted in a settlement. On July 20, 2008, Defendant sent a letter to the FDA admitting to the purchase of "fake Stackers" from Arun Datwani, and sale of same to Michael Schindele and ShopWars.com. See Exhibit B - Defendant's Letter dated July 30, 2008. In his letter, Defendant admitted that the goods that he had sold to Schindele were in fact counterfeit NVE STACKER 2 products. Id. at ¶¶ 14-15. Moreover, NVE has analyzed the samples of the shipment of STACKER 2 sold by Defendant to ShopWars.com and has determined the same to be counterfeit. Id. at ¶¶ 16-17. Thereafter, Plaintiff filed the instant six-count Complaint.

In the instant matter, Plaintiff moves for summary judgment as to Count I, which alleges that Defendant has willfully and maliciously infringed upon NVE's federally registered trademarks in violation of 15 U.S.C. § 1114. Defendant has participated in some pre-trial court proceedings, however, he has failed to oppose this motion. As such, the Court decides this motion unopposed.

## DISCUSSION

### A.   Standard of Review

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56©.  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material

fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Kaucher, 455 F.3d at 423. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is

a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the fact finder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### B.    Lanham Act Violation

Section 1114(1)(a) of the Lanham Act states that a person shall be liable in a civil action if, without the registrant's consent, that person:

> use in commerce any reproduction, counterfeit, copy, or colorable imitation
> of a registered mark in connection with the sale, offering for sale,
> distribution, or advertising of any goods or services on or in connection with
> which such use is likely to cause confusion, or to cause mistake, or to
> deceive;

15 U.S.C. § 1114(1)(a). To establish infringement, a plaintiff must prove that:(1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services. Microsoft Corp. v. CMOS Techs, Inc., 872 F.Supp. 1329, 1335 (D.N.J. 1994)(citing Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 291 (3d Cir. 1991); PB Brands, LLC v. Patel Shah Indian Grocery, No. 08-3205, 2009 U.S. App. LEXIS 12546, at *6-7 (3d Cir. Jun. 10, 2009). Moreover, under the Lanham Act, sellers of counterfeit products bear strict liability. Hard Café Licensing Corp. v. Concession Servs., Inc., 955 F.2d 1143, 1152 n.6 (7th Cir. 1992). In that regard, the plaintiff does not have to prove that the defendant intended to sell counterfeit products, or even that the defendant was willfully blind to the fact the goods were counterfeit. Checkpoint Sys., Inc. v. Check Point Sofware Techs., Inc., 269 F.3d 270 (3d Cir. 2001).

Here, with respect to the first two factors, the STACKER 2 mark is registered on the Principal Register of the U.S. Patent and Trademark Office, which constitutes "prima facie evidence that the mark is registered and valid, that the registrant owns the mark, and that the registrant has the

exclusive right to use the mark in commerce." K2 Advisors, LLC v. K2 Volatility Fund, LP, 2002 WL 31235701, at *8 (S.D.N.Y. Oct. 4, 2002); see 15 U.S.C. § 1057(b); Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 438 (3d Cir. 2000)("If the mark at issue is federally registered and has become incontestible, then validity, legal protectability, and ownership are proved"). Thus, "when a plaintiff sues for infringement of its registered mark, the defendant bears the burden to rebut the presumption of [the] mark's protectability by a preponderance of the evidence." K2 Advisor, 2002 WL 31235701 at *8 (citations omitted). Because Plaintiff has sufficiently proved that it registered and owns the STACKER 2 mark since September 22, 1998, and Defendant has not challenged the presumptive validity and registration of that mark, the Court finds that the STACKER 2 mark is valid and fully protectable.

The Court must determine next whether NVE demonstrated that there is a likelihood of confusion between its marks and the alleged STACKER 2 products sold by Defendant. Essentially, a likelihood of confusion arises when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.". A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000)(quoting Dranoff-Perlstein Associates v. Sklar, 967 F.2d 852, 862 (3d Cir. 1992)). In Interpace Corp v. Lapp, Inc., 721 F.2d 460 (3d Cir. 1983), the Third Circuit promulgated ten nonexclusive factors to guide the likelihood of confusion analysis. However, in setting forth this test, the Lapp court noted that, in most circumstances, a court engaging in a likelihood of confusion analysis need not go beyond the mark itself to come to its conclusion. Id.; see also A & H, 237 F.3d at 216 ("the general rule that marks should be viewed in their entirety does not undermine the common-sense precept that the more forceful and distinctive aspects of a mark should be given more

weight, and the other aspects less weight."). The nonexclusive factors are:

>(1) the degree of similarity between the owner's mark and the alleged infringing mark;
>
>(2) the strength of the owner's mark;
>
>(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
>
>(4) the length of time the defendant has used the mark without evidence of actual confusion arising;
>
>(5) the intent of the defendant in adopting the mark;
>
>(6) the evidence of actual confusion;
>
>(7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media;
>
>(8) the extent to which the targets of the parties' sales efforts are the same;
>
>(9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; [and]
>
>(10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

Facenda v. NFL Films, Inc., 542 F.3d 1007, 1019 (3d Cir. 2008) (citation omitted).

Here, the Court need not engage in a detailed discussion of the Lapp factors because Plaintiff's Complaint, as alleged and taken as true, establishes violations of the Lanham Act. See A & H, 237 F.3d 198, 213 (3d Cir. 2000)(when goods are directly competing and the marks are clearly similar, a district court may consider only the similarity of the marks themselves). Here, Plaintiff has shown that Defendant distributed and sold products under the STACKER 2 mark that competed with Plaintiff's products distributed under the same mark. In fact, in his deposition,

Defendant admitted that he offered to sell and sold counterfeit STACKER 2 nutritional supplement pills.  See Defendant's Dep. at 28:2 - 28:6.  Further, NVE has independently verified that the goods sold by Famous to ShopWars.com were counterfeit.  As the Microsoft court explained:

> it would be difficult to imagine a clearer case of consumer confusion than the instant case in which the defendant, acting in direct competition with the plaintiff, sold counterfeit products on which plaintiff's registered marks appear in their entirety.  Under these circumstances, the likelihood of consumer confusion, mistake or deception is clear.

Microsoft, 872 F.Supp. at 1335.  Analogous to Microsoft, the evidence here is clear - Defendant indeed caused a likelihood of consumer confusion by selling the counterfeit version of STACKER 2.  Accordingly, Plaintiff has established that Defendant infringed Plaintiff's STACKER 2 mark in violation of the Lanham Act.  Thus, Plaintiff's partial motion for summary judgment is granted.

Dated: July 21, 2009

        /s/  Freda L. Wolfson
        The Honorable Freda L. Wolfson,
        United States District Judge